UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACEY L. KEVELIGHAN, KEVIN W.
KEVELIGHAN, JAMIE LEIGH
COMPTON, JAMIE LYNN COMPTON,
and KEVIN KLEINHANS,

    Plaintiffs,

v.

TROTT & TROTT, P.C.; ORLANS
ASSOCIATES, P.C.; AMERICA'S
SERVICING COMPANY; DEUTSCHE
BANK NATIONAL TRUST COMPANY;
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.;
WEBSTER BANK, N.A.; FANNIE MAE;
FIRST HORIZON HOME LOANS, aka
FIRST TENNESSEE BANK, N.A., aka
METLIFE HOME LOANS, aka FIRST
HORIZON ASSET SECURITIES, INC.;
BANK OF NEW YORK; U.S. BANK
HOME MORTGAGE; WELLS FARGO
HOME MORTGAGE, and HSBC
MORTGAGE CORP.,

    Defendants.
_____/

Case No. 09-12543

Honorable Patrick J. Duggan

**<u>OPINION AND ORDER</u>**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on_May 26, 2011.

PRESENT:     THE HONORABLE PATRICK J. DUGGAN
                   U.S. DISTRICT COURT JUDGE

On June 29, 2009, Tracey L. Kevelighan, Kevin W. Kevelighan, Jamie Lynn

Compton, Jamie Leigh Compton, and Kevin Kleinhans filed this purported class-action lawsuit, alleging numerous violations of state and federal law in connection with the administration and enforcement of mortgage agreements. On October 27, 2009, Plaintiffs filed an Amended Complaint spanning 145 pages, containing 634 numbered paragraphs, and naming 40 purported plaintiff and defendant sub-classes.

Several defendants filed motions to dismiss, and this Court issued an Opinion and Order on July 7, 2010 granting these motions in part and denying them in part. Due to the length, complexity, and disorganization of the Amended Complaint, the Court sent a letter to all counsel of record on August 18, 2010, identifying a list of each plaintiff's remaining claims against each defendant. The Court invited counsel to object to the proposed list of claims, and no objections were received. Accordingly, the Court indicated its intent to proceed with the understanding that only the claims in that list were pending.

On February 15, 2011, Defendants First Horizon Home Loans ("First Horizon"), Wells Fargo Home Mortgage ("Wells Fargo"), and America's Servicing Company ("ASC") (collectively, "the Servicer Defendants") moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiffs responded to the motion on May 9, 2011, and the Court heard oral argument on May 12, 2011. For the reasons stated below, the Court grants the Servicer Defendants' motion.

## I. Factual Background

This suit arises from Defendants' alleged misconduct in administering mortgage and loan agreements. For simplicity, the Court will address separately the set of facts relevant to each Plaintiff's claims.

**A. Tracey Kevelighan (Lamplighter Lane)**

On March 17, 2006, Tracey Kevelighan obtained a loan from WMC Mortgage Corporation to purchase a home located at 2553 Lamplighter Lane, in Bloomfield Hills, Michigan. The loan was secured by a mortgage on the property. Wells Fargo and ASC later serviced this mortgage.

Kevelighan did not pay the property taxes assessed for July 2006, December 2006, or July 2007. Am. Compl. ¶¶ 36-37. ASC sent Kevelighan notices during September and October of 2007 indicating that the taxes were unpaid. *Id.* at ¶ 39, 41. In a letter dated December 11, 2007, ASC informed Kevelighan that it had paid the delinquent taxes and would establish an escrow account to collect the advance. *Id.* ¶ 50.

Kevelighan ceased making payments on the loan in April 2008. On May 18, 2008, ASC declared a default, warning that it would accelerate the loan unless the delinquent payments were made. *See* Am. Compl. Ex. 9. After Kevelighan failed to pay, ASC's foreclosure counsel, Orlans Associates, P.C., sent a letter to her indicating that ASC was accelerating the loan and foreclosure proceedings would soon begin. *See* Am. Compl. Ex. 10. Kevelighan, acting through her counsel, disputed the default and threatened litigation.

Trott & Trott, P.C. ("Trott") replaced Orlans Associates, P.C. as foreclosure counsel. On April 21, 2009, Trott sent Kevelighan a letter indicating that ASC had asked it to commence foreclosure proceedings. *See* Am. Compl. Ex. 12. Kevelighan responded through counsel in a letter dated April 24, 2009. This letter was sent to ASC, Trott, and

3

Wells Fargo, and included a "Qualified Written Request under RESPA."[1] In her letter, Kevelighan requested copies of: (1) the original, signed note; (2) the "pooling and servicing agreement" that applied to her mortgage; (3) any sub-servicing agreements that applied to her mortgage; (4) an itemization of all advances made in connection with the loan; and (5) the "Initial Escrow Disclosure" that the lender alleged she was provided with. *See* Am. Compl. Ex. 13 at 8. The letter also requested a "reinstatement quote."

On May 8, 2009, Trott sent a reinstatement quote to Kevelighan, stating that she could reinstate the loan by tendering payment of $65,953.10, of which $1,373.00 was recoverable legal fees. *See* Am. Compl. Ex. 15.

**B. Tracey and Kevin Kevelighan (Staman Court)**

On February 5, 2003, Tracey and Kevin Kevelighan obtained a loan from The Prime Financial Group, Inc., secured by a mortgage on a home located at 32001 Staman Court, in Farmington Hills, Michigan. Am. Compl. Ex. 21. Wells Fargo allegedly serviced this loan. Am. Compl. ¶ 112. The Kevelighans did not pay the property taxes assessed for July and December 2007. *Id.* at ¶ 123. Wells Fargo later paid these taxes and established an escrow account to collect the advance. *Id.* at ¶ 151. In a letter dated November 10, 2008, Trott notified the Kevelighans that Wells Fargo had asked Trott to begin foreclosure proceedings. *See* Am. Compl. Ex. 41. The foreclosure sale was adjourned several times and eventually held on June 16, 2009. Am. Compl. ¶ 204.

**C. Jamie Lynn Compton and Jamie Leigh Compton (Deerhaven Park Drive)**

---

[1] "RESPA" refers to the Real Estate Settlement Procedures Act of 1974, 26 U.S.C. § 2061 *et seq.*

4

On December 27, 2004, Jamie Lynn Compton and Jamie Leigh Compton obtained loan of $230,500 from First Horizon. The loan was secured by a mortgage on a home located at 4622 Deerhaven Park Drive, in Lowell, Michigan. *See* Am. Compl. Ex. 46.

The Comptons did not pay the property taxes assessed for December 2006 and July 2007. Am. Compl. ¶¶ 219-20. First Horizon paid these taxes on September 13, 2007 and notified the Comptons that it would establish an escrow account to collect the advance. This raised the expected monthly payment on the loan. For the next few months, the Comptons tendered only the original payment amount, which First Horizon rejected. *Id.* at ¶¶ 232-33. On January 30, 2008, First Horizon sent the Comptons a letter indicating that the loan was in default, and requested payment of $2,451.18 by February 29, 2008. First Horizon notified the Comptons on May 13, 2008 that the account had been referred to counsel to institute foreclosure proceedings. *See* Am. Compl. Ex. 50.

On May 14, 2008, Trott notified the Comptons that their loan had been accelerated and that they could request a reinstatement quote. *See* Am. Compl. ¶ 51. The Comptons have not alleged that they requested such a quote, and they admit that they did not pay any attorney's fees in connection with the loan. Jamie Leigh Compton Dep. Oct. 27, 2007 71:16-17. On July 3, 2008, First Horizon purchased the Deerhaven Park property at a sheriff's sale.

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement

5

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553.

Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*, 106 S. Ct. at 2514.

### III. Discussion

**A. Tracey Kevelighan's RESPA Claim**

Tracey Kevelighan alleges that ASC and Wells Fargo failed to adequately respond to her qualified written request, in violation of 12 U.S.C. § 2605(e). The statute provides a

6

remedy for an aggrieved borrower:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
>
> (1) Individuals. In the case of any action by an individual, an amount equal to the sum of -
> (A) any actual damages to the borrower as a result of the failure; and
> (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

12 U.S.C. § 2605(f). Where, as here, the plaintiff has not alleged a pattern or practice of noncompliance, the remedy is limited to "actual damages suffered by the borrower as a result of the failure." *Id.*

ASC and Wells Fargo argue that Kevelighan's claim fails, as she has not shown that any actual damage occurred. They note that in her deposition, Kevelighan could not point to any damages she had suffered as a result of the alleged violation. T. Kevelighan Dep. 109:15, Nov. 3, 2010. At the hearing, Kevelighan's counsel argued that because this litigation arose from the lenders' failure to respond to her written request, the costs of filing this action constitute actual damages. Courts applying 12 U.S.C. § 2605(f) have rejected this argument. *See Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) ("Nor does simply having to file suit suffice as a harm warranting actual damages. If such were the case, every RESPA suit would inherently have a claim for damages built in."). The Court finds the reasoning of *Lal* persuasive. Allowing the costs of filing suit to satisfy the actual damages requirement of § 2605(f) would render the phrase "as a result of the failure" superfluous, as a borrower would incur such damages simply by filing her action. Because the costs of this action do not constitute damages

7

under § 2605(f), Kevelighan's claim fails.[2] A plaintiff asserting a claim under § 2605(f) must allege that she was actually harmed by the RESPA violation. *Battah v. Resmae Mortg. Corp.*, 746 F. Supp. 2d 869, 876 (E.D. Mich. 2010); *Mekani v. Homecomings Fin., LLC*, 2010 U.S. Dist. LEXIS 66822, at *27-28 (E.D. Mich. July 6, 2010) (collecting cases). Kevelighan has asserted no other basis upon which the Court could find damages. The Court therefore grants summary judgment for ASC and Wells Fargo.

## B. Plaintiffs' Unjust Enrichment Claims

Remaining against the Servicer Defendants are unjust enrichment claims raised by Tracey Kevelighan (Lamplighter Lane), Tracey and Kevin Kevelighan (Staman Court), and Jamie Lynn Compton and Jamie Leigh Compton (Deerhaven Park). Plaintiffs claim that the Servicer Defendants were unjustly enriched through the assessment of excessive attorney's fees. A plaintiff asserting a claim of unjust enrichment must show that the defendant received a benefit from the plaintiff and an inequity resulted as a consequence of defendant's retention of that benefit. *Liggett Rest. Group, Inc. v. City of Pontiac*, 260 Mich. App. 127, 137, 676 N.W.2d 633, 639 (Mich. Ct. App. 2003). Neither the Comptons nor the Kevelighans, however, allege that they paid the attorney's fees listed in their respective reinstatement quotes. Plaintiffs assert that the improper assessment of fees

---

[2] Even if such damages would suffice, it is not clear that the costs of this action are attributable to the alleged RESPA violation. A review of the Amended Complaint demonstrates that Plaintiffs filed this suit in response to actions taken by their lenders, including the payment of property taxes and the initiation of foreclosure proceedings. These actions appear to be unrelated to Kevelighan's request, which sought copies of loan agreements, an itemization of advances, and a copy of an escrow disclosure statement. Thus, any portion of the costs of this suit attributable to Kevelighan's RESPA claim appears to be immaterial.

against their accounts constitutes unjust enrichment, regardless of whether those fees were paid. Pls.' Br. Opp'n Summ. J. 4. Plaintiffs offer no authority for this proposition, and the Court cannot conclude that the Servicer Defendants were enriched by fees that were never paid.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the motion for summary judgment filed by Wells Fargo, ASC, and First Horizon is **GRANTED**.

s/PATRICK J. DUGGAN  
UNITED STATES DISTRICT JUDGE

Copies to:

Kevin W. Kevelighan, Esq.
Peter W. Macuga, II, Esq.
Matthew J. Boettcher, Esq.
Timothy B. Myers, Esq.
Dana M. Hathaway, Esq.
Lawrence C. Mann, Esq.
Mark P. Schneebeck, Esq.