UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACEY L. KEVELIGHAN, KEVIN W.
KEVELIGHAN, JAMIE LEIGH
COMPTON, JAMIE LYNN COMPTON,
and KEVIN KLEINHANS,

    Plaintiffs,

v.

TROTT & TROTT, P.C.; ORLANS
ASSOCIATES, P.C.; AMERICA'S
SERVICING COMPANY; DEUTSCHE
BANK NATIONAL TRUST COMPANY;
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.;
WEBSTER BANK, N.A.; FANNIE MAE;
FIRST HORIZON HOME LOANS, aka
FIRST TENNESSEE BANK, N.A., aka
METLIFE HOME LOANS, aka FIRST
HORIZON ASSET SECURITIES, INC.;
BANK OF NEW YORK; U.S. BANK
HOME MORTGAGE; WELLS FARGO
HOME MORTGAGE, and HSBC
MORTGAGE CORP.,

    Defendants.
_____/

Case No. 09-12543

Honorable Patrick J. Duggan

**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on_May 26, 2011.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

On June 29, 2009, Tracey L. Kevelighan, Kevin W. Kevelighan, Jamie Lynn

Compton, Jamie Leigh Compton, and Kevin Kleinhans filed this purported class-action lawsuit, alleging numerous violations of state and federal law in connection with the administration and enforcement of mortgage agreements. On October 27, 2009, Plaintiffs filed an Amended Complaint spanning 145 pages, containing 634 numbered paragraphs, and naming 40 purported plaintiff and defendant sub-classes.

Several defendants filed motions to dismiss, and this Court issued an Opinion and Order on July 7, 2010 granting these motions in part and denying them in part. Due to the length, complexity, and disorganization of the Amended Complaint, the Court sent a letter to all counsel of record on August 18, 2010, identifying a list of each plaintiff's remaining claims against each defendant. The Court invited counsel to object to the proposed list of claims, and no objections were received. Accordingly, the Court indicated its intent to proceed with the understanding that only the claims in that list were pending.

On February 15, 2011, Defendants The Bank of New York Mellon ("BNY Mellon"), Deutsche Bank National Trust Company ("Deutsche Bank"), and Federal National Mortgage Association ("Fannie Mae") (collectively, "the Mortgagee Defendants") moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiffs filed a response on May 9, 2011, and the Court heard oral argument on May 12, 2011. For the reasons stated below, the Court grants the Mortgagee Defendants' motion.

## I. Factual Background

This suit arises from Defendants' alleged misconduct in administering mortgage and loan agreements. For simplicity, the Court will address separately the set of facts relevant to each Plaintiff's claims.

**A. Tracey Kevelighan (Lamplighter Lane)**

On March 17, 2006, Tracey Kevelighan obtained a loan from WMC Mortgage Corporation to purchase a home located at 2553 Lamplighter Lane, in Bloomfield Hills, Michigan. The loan was secured by a mortgage on the property. Kevelighan alleges that Deutsche Bank held this mortgage loan, and America's Servicing Company ("ASC") and Wells Fargo Home Mortgage ("Wells Fargo") serviced the loan.

Kevelighan did not pay the property taxes assessed for July 2006, December 2006, or July 2007. Am. Compl. ¶¶ 36-37. ASC sent Kevelighan notices during September and October of 2007 indicating that the taxes were unpaid. *Id.* at ¶ 39, 41. In a letter dated December 11, 2007, ASC informed Kevelighan that it had paid the delinquent taxes and would establish an escrow account to collect the advance. *Id.* ¶ 50.

Kevelighan ceased making payments on the loan in April 2008. On May 18, 2008, ASC declared a default, warning that it would accelerate the loan unless the delinquent payments were made. *See* Am. Compl. Ex. 9. After Kevelighan failed to pay, ASC's foreclosure counsel, Orlans Associates, P.C., sent a letter to her indicating that ASC was accelerating the loan and foreclosure proceedings would soon begin. *See* Am. Compl. Ex. 10. Kevelighan, acting through her counsel, disputed the default and threatened litigation.

Trott & Trott, P.C. ("Trott") replaced Orlans Associates, P.C. as foreclosure counsel. On April 21, 2009, Trott sent Kevelighan a letter indicating that ASC had requested it to commence foreclosure proceedings. *See* Am. Compl. Ex. 12. Kevelighan responded through counsel on April 24, 2009, requesting, *inter alia*, a "reinstatement quote." On May 8, 2009, Trott sent a reinstatement quote to Kevelighan, providing that she could

reinstate her loan by tendering payment of $65,953.10, of which $1,373.00 was recoverable legal fees. *See* Am. Compl. Ex. 15.

**B. Tracey and Kevin Kevelighan (Staman Court)**

On February 5, 2003, Tracey and Kevin Kevelighan obtained a loan from The Prime Financial Group, Inc., secured by a mortgage on a home located at 32001 Staman Court, in Farmington Hills, Michigan. Am. Compl. Ex. 21. The Kevelighans allege that Fannie Mae held this loan and Wells Fargo serviced it. Am. Compl. ¶ 112. The Kevelighans did not pay the property taxes assessed for July and December 2007. *Id.* at ¶ 123. Wells Fargo later paid these taxes and established an escrow account to collect the advance. *Id.* at ¶ 151. In a letter dated November 10, 2008, Trott notified the Kevelighans that Wells Fargo had asked Trott to begin foreclosure proceedings. *See* Am. Compl. Ex. 41. The foreclosure sale was adjourned several times and eventually held on June 16, 2009. Am. Compl. ¶ 204.

**C. Jamie Lynn Compton and Jamie Leigh Compton (Deerhaven Park Drive)**

On December 27, 2004, Jamie Lynn Compton and Jamie Leigh Compton obtained a loan of $230,500 from First Horizon. The loan was secured by a mortgage on a home located at 4622 Deerhaven Park Drive, in Lowell, Michigan. *See* Am. Compl. Ex. 46. The Comptons allege that BNY Mellon held this loan and First Horizon Home Loan Corporation ("First Horizon") serviced it. Am. Compl. ¶ 208.

The Comptons did not pay the property taxes assessed for December 2006 and July 2007. Am. Compl. ¶¶ 219-20. First Horizon paid these taxes on September 13, 2007 and notified the Comptons that it would establish an escrow account to collect the advance.

This raised the expected monthly payment on the loan.  For the next few months, the Comptons tendered only the original payment amount, which First Horizon rejected.  *Id.* at ¶¶ 232-33.  On January 30, 2008, First Horizon sent the Comptons a letter indicating that the loan was in default, and requested payment of $2,451.18 by February 29, 2008.  First Horizon notified the Comptons on May 13, 2008 that the account had been referred to counsel to institute foreclosure proceedings.  *See* Am. Compl. Ex. 50.

On May 14, 2008, Trott notified the Comptons that their loan had been accelerated and that they could request a reinstatement quote.  *See* Am. Compl. ¶ 51.  The Comptons have not alleged that they requested such a quote, and they admit that they did not pay any attorney's fees in connection with the loan.  Jamie Leigh Compton Dep. Oct. 27, 2010 71:16-17.  On July 3, 2008, First Horizon purchased the Deerhaven Park property at a sheriff's sale.

**D. Jamie Lynn Compton and Jamie Leigh Compton (Beech Street)**

On January 3, 2007, Jamie Lynn Compton and Jamie Leigh Compton obtained a loan of $204,800 from HSBC Mortgage Corporation ("HSBC").  The loan was secured by a mortgage on property located at 900 Beech Street, in Lowell, Michigan.  *See* Defs.' Br. Supp. Mot. Ex. 43.  The Comptons allege that Fannie Mae held this loan.  Am. Compl. ¶¶ 246-47.

The Comptons fell behind on the loan payments, and in a letter dated May 28, 2008, Trott notified them that HSBC had referred the account to Trott to begin foreclosure proceedings.  Defs.' Br. Supp. Mot. Ex. 44.  The Federal Home Loan Mortgage Corporation eventually purchased the property at a sheriff's sale in July 2008.

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. at 2553.

Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*, 106 S. Ct. at 2514.

### III. Discussion

**A. Fair Debt Collection Practices Act Claims**

Plaintiffs claim that the Mortgagee Defendants required immediate repayment of tax advances and collected excessive attorney's fees, in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* The Mortgagee Defendants argue that they must be granted summary judgment on these claims, because: (1) the FDCPA does not govern their alleged conduct; (2) the communications regarding attorney's fees did not constitute "debt collection" under the statute; (3) the Comptons' FDCPA claims are time-barred; (4) Michigan law does not bar the attorney's fees in question; and (5) tax advances were collected in accordance with Plaintiffs' mortgage agreements and applicable law.

The Mortgagee Defendants contend that the FDCPA does not govern the conduct at issue. The statute provides: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. "Debt collector" includes:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, *debts owed or due or asserted to be owed or due another*.

*Id.* § 1692a(6) (emphasis added). The term "debt collector" does not include a creditor bank collecting its own debts. *Id.* § 1692a(6)(F); *see also Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003). The Mortgagee Defendants assert that they owned the debts in question, and Plaintiffs have presented no evidence showing otherwise. Plaintiffs note that a creditor may be subject to the FDCPA if he "uses any name other than his own which would indicate that a third person is collecting or attempting to collect

such debts." 15 U.S.C. § 1692a(6). Plaintiffs claim that the Mortgagee Defendants used "false names" in collecting debts, Am. Compl. ¶¶ 337-39, but have failed to point to any evidence supporting this assertion. The allegedly false names are the names of other lenders, and there is no evidence before this Court demonstrating that those names were used by the Mortgagee Defendants rather than the respective lenders. The Court therefore concludes that the Mortgagee Defendants' conduct falls outside the scope of the FDCPA.

The Mortgagee Defendants argue that the FDCPA does not prohibit the alleged conduct. Plaintiffs claim that the Mortgagee Defendants sought to collect excessive attorney's fees through reinstatement quotes. *See*, *e.g.*, Am. Compl. ¶ 261 ("The excessive fees in the reinstatement quote were a violation of the Fair Debt Collection Practices Act."). Responding to a borrower's request for information concerning reinstatement does not constitute "debt collection" under the FDCPA. *See* 1/18/2011 Op. & Order at 8; *see also Williams v. Trott*, 822 F. Supp. 1266, 1269 (E.D. Mich. 1993). Thus, the Mortgagee Defendants' responses did not violate the statute.

The Court concludes that the Comptons' claims are also time-barred. FDCPA claims must be raised within one year of the date of the violation. 15 U.S.C. § 1692k(d). In the Amended Complaint, the Comptons allege violations occurring prior to and during May 2008. Because this was more than one year before the Complaint was filed, the FDCPA's statute of limitations bars the Comptons' claims.

The Mortgagee Defendants argue that the attorney's fees at issue are not excessive under Michigan law. Plaintiffs assert that Michigan Compiled Laws § 600.2431(2) limits the applicable attorney's fee to $37.50. *See*, *e.g.*, Am. Compl. ¶ 84. The statute provides:

8

> Where an attorney is employed to foreclose a mortgage by advertisement, an attorney's fee, not to exceed any amount which may be provided for in the mortgage, may be included as a part of the expenses in the amount bid upon such sale for principal and interest due thereon in the following amounts:
>
> (a) for all sums of $1,000.00 or less, $25.00.
> (b) for all sums over $1,000.00 but less than $5,000.00, $50.00.
> (c) for all sums of $5,000.00 or more, $75.00.
>
> But if payment is made after foreclosure proceedings are commenced and before sale is made, only 1/2 of such attorney's fees shall be allowed. Both the principal and the interest due thereon shall be included in the sum on which the attorney's fee is computed.

Michigan Compiled Laws § 600.2431(2). By its plain language, the statute limits the fee that "may be included as a part of the expenses *in the amount bid upon such sale*." *Id.* (emphasis added). In a reinstatement transaction, there is no sale of the property and the borrower continues to make payments to the lender. Because no sale occurs, the Michigan statute does not govern the attorney's fee applicable to reinstatement. The attorney's fees that are the focus of Plaintiffs' claims were included in reinstatement quotes; they are therefore not subject to Michigan Compiled Laws § 600.2431(2).

The Mortgagee Defendants contend that Plaintiffs' mortgages allow them to seek immediate repayment of funds advanced to cover unpaid property taxes. Section 3 of Plaintiffs' mortgage agreements provides:

> If Borrower is obligated to pay Escrow Items[1] directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice

---

[1] "Escrow Items" include taxes and other assessments that can attain priority over the mortgage, such as property taxes. *See* Am. Compl. Exs. 1, 21, 46 § 3.

9

> given in accordance with Section 15 and, upon such revocation, Borrower shall
> pay to Lender all Funds, and in such amounts, that are then required under this
> Section 3.

Am. Compl. Exs. 1, 21, 46 § 3.  Section 9 allows the lender to pay what is reasonable to protect its interest in the property if the borrower fails to perform any of the covenants of the mortgage.  Nonpayment of property taxes constitutes just such a failure.  *See* Am. Compl. Exs. 1, 21, 46 § 4.  Thus, when Plaintiffs failed to pay their property taxes, each lender was contractually entitled to pay those taxes to protect its interest.  Each lender was also permitted to require the borrower to repay the funds advanced.  Section 3 governs the timing of repayment:

> If there is a shortage of funds held in escrow, as defined under RESPA,[2] Lender
> shall notify Borrower as required by RESPA, and Borrower shall pay to Lender
> the amount necessary to make up the shortage in accordance with RESPA, but
> in no more than 12 monthly payments.  If there is a deficiency of Funds held in
> escrow, as defined under RESPA, Lender shall notify Borrower as required by
> RESPA, and Borrower shall pay to Lender the amount necessary to make up
> the deficiency in accordance with RESPA, but in no more than 12 monthly
> payments.

Am. Compl. Exs. 1, 21, 46 § 3.  The regulations implementing RESPA allow the lender to require payment of a deficiency or shortage in 12 monthly installments.  *See* 24 C.F.R. § 3500.17(d).  The Mortgagee Defendants have demonstrated that they complied with the mortgage agreements and applicable law, as they established escrow accounts for Plaintiffs and required repayment of the tax advances over a twelve-month period.

    In their response brief, Plaintiffs argue that the initial deposits and monthly deposits

---

[2] "RESPA" refers to the Real Estate Settlement Procedures Act of 1974, 26 U.S.C. § 2061 *et seq.*

10

required for the escrow accounts by the Mortgagee Defendants were "far in excess of that allowed by RESPA." Pls.' Br. Opp'n Summ. J. 5. Plaintiffs offer no evidence or explanation to support this assertion, and have not identified any statutory provisions barring the amounts charged to their accounts. Absent such a showing, the Court concludes that the Mortgagee Defendants must be granted summary judgment.

**B. Unjust Enrichment Claims**

Plaintiffs claim that the Mortgagee Defendants were unjustly enriched through the assessment of excessive attorney's fees. A plaintiff asserting a claim of unjust enrichment must show that the defendant received a benefit from the plaintiff and an inequity resulted as a consequence of defendant's retention of that benefit. *Liggett Rest. Group, Inc. v. City of Pontiac*, 260 Mich. App. 127, 137, 676 N.W.2d 633, 639 (Mich. Ct. App. 2003). Neither the Comptons nor the Kevelighans, however, allege that they paid the attorney's fees listed in their respective reinstatement quotes. Plaintiffs assert that the improper assessment of fees against their accounts constitutes unjust enrichment, regardless of whether those fees were paid. Pls.' Br. Opp'n Summ. J. 5. Plaintiffs offer no authority for this proposition, and the Court cannot conclude that the Mortgagee Defendants were enriched by fees that were never paid.

**C. Breach of Contract Claims**

The Mortgagee Defendants contend that Plaintiffs' breach of contract claims lack merit, as all tax advances were collected in accordance with the mortgage agreements. The Court agrees. Defendants have demonstrated that they complied with the escrow provisions of Plaintiffs' mortgage agreements, and Plaintiffs have failed to identify any

evidence showing otherwise. Plaintiffs' breach of contract claims regarding attorney's fees also fail, as the mortgage agreements provide for the collection of a reasonable attorney's fee in the event of reinstatement. The Michigan statute cited by Plaintiffs is inapplicable, as it does not govern the attorney's fee in a reinstatement transaction.

Plaintiffs also have failed to establish damages resulting from the alleged breach. "Damages are an element of a breach of contract action." *New Freedom Mortg. Corp. v. Globe Mortg. Corp.*, 281 Mich. App. 63, 69, 761 N.W.2d 832, 837 (Mich. Ct. App. 2008). Where a plaintiff has not established damages, summary judgment is appropriate. *Id.* Plaintiffs did not reinstate their loans, and they have not shown that they actually paid any attorney's fees. Plaintiffs have not demonstrated how they were injured by the Mortgagee Defendants' payment of property taxes. The Court concludes that the Mortgagee Defendants must be granted summary judgment on the breach of contract claims.

### D. Truth in Lending Act Claim

The Comptons seek rescission under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* They admit that the statute imposes a three-year limitations period, but argue that the doctrine of recoupment allows their claim to proceed, as they have raised rescission in defense to an eviction suit. Am. Compl. ¶ 503-04. The Supreme Court rejected this argument in *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 415, 118 S. Ct. 1408, 1411 (1998). The doctrine of recoupment provides that a defense arising out of the transaction upon which the plaintiff's action is based survives the expiration of the statute of limitations that would otherwise bar the recoupment claim as an independent cause of action. *Id.* at 415, 118 S. Ct. at 1411. In *Beach*, the Supreme Court held that the three-year limitations period

12

for rescission under 15 U.S.C. § 1635f applies to the duration of the right itself, not simply the time for filing suit. *Beach*, 523 U.S. at 417, 118 S. Ct. at 1412. The Comptons' right to rescission expired before this action was filed. They allege that their loan closed on December 27, 2004, Am. Compl. ¶ 501, but this action was filed over four years later, on June 29, 2009. The Court accordingly grants summary judgment for the Mortgagee Defendants on the Comptons' Truth in Lending Act claim.

### E. Equitable Mortgage and Specific Performance Claims

Plaintiffs ask the Court to convert the sheriff's deeds on the foreclosed properties into equitable mortgages. *See*, *e.g.*, Am. Compl. ¶¶ 512-21. A deed can be declared an equitable mortgage if: (1) one party abuses a relationship of trust or guidance; or (2) a creditor obtains a deed by abusing its "power of coercion" over the debtor. *Schultz v. Schultz*, 117 Mich. App. 454, 459, 324 N.W.2d 48, 51 (Mich. Ct. App. 1982). Plaintiffs have not presented evidence establishing either form of abuse. The Court therefore finds no grounds for converting the sheriff's deeds into equitable mortgages. Furthermore, because the Lamplighter Lane home was never sold, there is no sheriff's deed for this Court to convert with respect to that property.

Plaintiffs seek "specific performance," apparently requesting this Court to order the Mortgagee Defendants to make new loans to Plaintiffs under certain conditions. *See* Am. Compl. ¶¶ 516-21. The Court concludes, for the reasons stated above, that Plaintiffs have not established actionable misconduct. Accordingly, the Court cannot justify imposing such a remedy, and denies Plaintiffs' request.

### IV. Conclusion

13

For the reasons stated above,

**IT IS ORDERED** that the motion for summary judgment filed by BNY Mellon, Deutsche Bank, and Fannie Mae is **GRANTED**.

s/PATRICK J. DUGGAN  
UNITED STATES DISTRICT JUDGE

Copies to:

Kevin W. Kevelighan, Esq.
Peter W. Macuga, II, Esq.
Matthew J. Boettcher, Esq.
James W. McGarry, Esq.
Timothy B. Myers, Esq.
Dana M. Hathaway, Esq.
Lawrence C. Mann, Esq.
Mark P. Schneebeck, Esq.